## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **JEROME DAVIS,** ) | **CASE NO. 4:06CV3169** |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **MEMORANDUM** |
| ) | **AND ORDER** |
| **LANCASTER COUNTY NEBRASKA,** ) | |
| **et.al.,** ) | |
| ) | |
| **Defendants.** ) | |

This matter is before the court on the parties cross motions for Summary Judgment (Filing Nos. 22 & 29). The plaintiff, Jerome Davis, asserts federal civil rights claims pursuant to 42 U.S.C. § 1983 alleging that the defendants, Lancaster County and Officers McMillan, Hatfield, Bustamante, Dillion, Hauder, Shell, and Ceballos in their individual and official capacities, violated his federal civil rights by using excessive force to lock down Davis in his cell.

## FACTUAL BACKGROUND

Davis was in the custody of Lancaster County Corrections Department in Lincoln, Nebraska, between November 10, 2004 and April 14, 2005. (Filing No. 26-4 Affidavit of Thomas McMillan at ¶ 2 & 4). On March 12, 2005, Davis was awaiting sentencing. (Filing No. 26-7 Commitment The State of Nebraska v. Jerome Davis). On that date, Davis was released from his cell and ordered by Officer Larsen to clean and take a shower, or lock down. (Filing No. 35 Affidavit of Thomas McMillan Exhibit A).[1] Defendant refused to follow

---

[1] In the first affidavit filed by Davis, he adopts portions of the incident report of Officer Thomas McMillan as a true and correct description of the events giving rise to his claims. In Davis's most recent affidavit he adopts the entire incident report as a true and correct description of events (Filing No. 35, 30 & 31).

this order. *Id.* Officer McMillan instructed Officer Larsen to continue to monitor Davis and Officer McMillan also monitored Davis from the Booking Camera. *Id.* Officer McMillan observed Davis walk around the sub-dayroom, shadow boxing and hitting the glass with his fist. *Id.* Officer McMillan instructed Davis to lock down in his cell and Davis responded with threats towards Officer McMillan and his staff. *Id.* Because Davis was a controlled segregation inmate who had assaulted staff in the past, Officer McMillan asked Officers Bustamante, Hatfield, Dillon, Hauder, and Ceballos to assist in locking Davis down. *Id.*

When the officers arrived at Davis's location he had entered his cell; however, his cell door had not been secured. *Id.* The officers entered Davis's cell, at which point, the defendants claim Davis stood and attempted to take an aggressive stance, while Davis contends that he remained calm. (Filing Nos. 1 & 35). Officer Bustamante placed an electronic restraint shield against Davis's shoulder and attempted to push him back to his bed while instructing Davis to go to the floor and not resist.[2] (Filing No. 35 Affidavit Officer Thomas McMillan Exhibit A). Davis kicked the shield and continued to kick other staff as he was placed down on the bed. *Id.* Davis continued to kick and resist the efforts of the officers to restrain Davis. *Id.* Officer Ceballos placed an electronic restraint device to Davis's leg while instructing him to stop resisting. *Id.*

Once Davis was restrained, he was brought out to the floor of the sub-dayroom and was supervised by Officers Bustamante and Ceballos while other staff searched his cell and removed contraband items. *Id.* While Davis was being held in the sub-dayroom he

---

[2]The Lancaster County Policy on Use and Training of Electronic Restraints defines an Electronic Restraint as a "Stun gun and stun shield to temporarily impair a person." (Filing No. 31-6 Affidavit of Michael Thurber Exhibit G).

continued to threaten and spit at the staff.  *Id.*  After the search was complete, Davis was returned to his cell.  *Id.*  Davis was assessed for injuries after the incident and had a superficial abrasion on his left arm.  (Filing No. 31-5 Affidavit of Shawn Kusek Exhibit D).

## LEGAL ANALYSIS

**Standard of Review**

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446 (8th Cir. 1994). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999).  In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with " 'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.' " *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

**§ 1983 Claim of Excessive Force**

Davis asserts federal civil rights claims pursuant to 42 U.S.C. § 1983 alleging that Lancaster County and Officers McMillan, Hatfield, Bustamante, Dillion, Hauder, Shell, and Ceballos in their individual and official capacities used excessive force in locking Davis down in his cell. In the defendants' summary judgment motion they claim that the officers did not use excessive force, that the officers are protected in their individual capacity by qualified immunity, and that Davis failed to exhaust his administrative remedies. In Davis's summary judgment motion he argues that as a matter of law the officers used excessive force.

   **1. Qualified Immunity**

A government employee, sued for damages in his or her individual capacity pursuant to 42 U.S.C. § 1983, is entitled to qualified immunity unless the plaintiff shows that the defendant violated the plaintiff's "clearly established" federal statutory or constitutional right(s). *See Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987). "[The plaintiff's] burden is not easily discharged: 'That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*.' " *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996) (emphasis in original; citation omitted). "Stated another way, qualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful 'in light of clearly established law and the

4

information [that the defendant] possessed.' " *Smithson v. Aldrich*, 235 F.3d 1058, 1061 (8th Cir. 2000) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.' " *Hunter v. Bryant,* 502 U.S. 224, 229 (1991) (per curiam) (quoting *Malley v. Briggs,* 475 U.S. 335, 343, 341 (1986)). Therefore, "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

The Supreme Court in *Saucier*, clarified the manner in which a court should analyze a summary-judgment motion on the basis of qualified immunity in the context of an excessive-force claim. In *Saucier*, the Court stated that the first question that should be considered is whether: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201. If there is no constitutional violation, then the grant of summary judgment based on qualified immunity is appropriate. If the court determines that a constitutional right was violated, then the Court stated that the next question that should be considered is "whether the right was clearly established." *Id*.

In any action under § 1983, "the first step is to identify the exact contours of the underlying right said to have been violated." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). At the time of the March 12, 2005 incident, Davis was awaiting sentencing. The Eighth Circuit has held that "[b]etween arrest and sentencing lies something of a legal twilight zone." *Wilson v. Spain*,

5

209 F. 3d 713, 715 (8th Cir. 2000). Here, the court agrees with the defendants that Davis's claims do not fit neatly into an analysis of the constitutional standards based on his status as a pre-trial detainee or as a convicted prisoner.

Pretrial detainees are those individuals whom the government has probable cause to believe have committed crimes. *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975). Their confinement conditions are analyzed under the due process clause of the Fifth and Fourteenth Amendments rather than the Eighth Amendment's "cruel and unusual punishment" standard which is used for convicted prisoners. *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989). The Eighth Circuit has held that "[t]he evaluation of excessive-force claims brought by pretrial detainees, although grounded in the Fifth and Fourteenth Amendments rather than the Fourth Amendment, also relies on an objective reasonableness standard." *Andrews v. Neer*, 253 F.3d 1052, 1060 (2001). "The injuries detainees suffer must be necessarily incident to administrative interests in safety, security and efficiency. Constitutionally infirm practices are those that are punitive in intent, those that are not rationally related to a legitimate purpose or those that are rationally related but are excessive in light of their purpose." *Johnson-El*, 878 F.2d at 1048 (citing *Bell v. Wolfish*, 441 U.S. 520, 538, n. 20 (1979)).

On the other hand, excessive-force claims brought by convicted prisoners fall under the protections provided by the Eighth Amendment's prohibition of cruel and unusual punishment. *Whitley v. Albers*, 475 U.S. 312, 318-22 (1986). The Eighth Circuit considers "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 320-21; *see also*

*Estate of Davis v. Delo*, 115 F.3d 1388, 1394 (8th Cir.1997). After reviewing the record as a whole, the court concludes that under either standard Davis has failed to establish a violation of a constitutional right.

Viewing the incident in light of the continuum of events that occurred on March 12, 2005, there is nothing in the record to suggest that the defendants used force maliciously and sadistically to cause harm, or that the defendants exceeded the degree of force they perceived necessary to subdue Davis in the circumstances to maintain safety, security, and efficiency. Prior to the use of force, the defendants witnessed Davis ignore multiple commands, display aggressive behavior towards the defendants, and the defendants were aware of Davis's past behavior of assaulting officers. In each of the two instances in which force was employed against Davis by use of the electronic devices, the force was used as a direct response to an immediate threat to institutional safety, security, and efficiency. In the first instance, the electronic restraint device was used after Davis had ignored multiple direct commands by officers, had threatened officers, and acted in an aggressive manner towards officers. In the second instance, the device was used as Davis continued to kick and attack the officers as they attempted to subdue Davis. There is no evidence to support a finding that the use of the device was intended to punish Davis. Furthermore, the issue of the use of stun guns has been litigated in the Eighth Circuit, and the Court has held that a prison guard's use of a stun gun in the face of a threat to another guard did not violate the Eighth Amendment even though the guards could have subdued the inmate without the device. *Jasper v. Thalacker*, 999 F.2d 353 (8th Cir.1993).

As for harm suffered by Davis, he does not identify any injury attributable to the single incident on March 12, 2005 beyond the de minimis abrasion to his left arm.

Because the record simply does not contain evidence of a use of force to cause harm, an unnecessary and wanton infliction of pain, an exaggerated and disproportionate response to misconduct, or a degree of force which violated the Constitution, the individual defendants' motion for summary judgment in their individual capacities is granted.

### 2. Claims Against The County

Only individual defendants, and not the County, may claim qualified immunity. *Leatherman v. Tarrant County Narcotics intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993) (a municipality may not assert qualified immunity as a defense to a claim under § 1983). A suit against a public employee in his or her official capacity is merely a suit against the public employer. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Therefore, a claim against a law enforcement or corrections officer, in his or her official capacity, is in reality a claim against the entity that employs the officer. *Parrish v. Luckie*, 963 F.2d 201, 203 n.1 (8th Cir. 1992).

The basis of a claim against a city or county ("municipal liability") lies only "in cases where a municipal 'policy' or 'custom' causes the constitutional violation." *Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir. 1998). Davis points to no custom or policy of Lancaster County, Nebraska or the Lancaster County Correctional Department that caused him deprivation of his constitutional rights. Therefore, the County and the individual defendants in their official capacities, are entitled to summary judgment on the additional ground that no custom or policy of Lancaster County or the Lancaster County Correctional Department caused any constitutional injury to Davis.

IT IS ORDERED:

1. That the plaintiff's Motion for Summary Judgment (Filing No. 22) is denied;

2. That the defendants' Motion for Summary Judgment (Filing No. 29) is granted;

3. That the plaintiff's Motion to Compel (Filing No. 36) is denied as moot;

4. A separate Judgment will be entered; and

5. The Clerk of Court is directed to send a copy of this Memorandum and Order to the plaintiff at his last known address.

DATED this 2nd day of April, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge